[No. 387-3.    Division Three.    March 14, 1972.]

JOSEPHINE NUTLEY, *Appellant,* v. S. J. GREGORY, *Respondent.*

*Roger L. Olson* (of *Olson & Olson*), for appellant.

*John G. Schultz* (of *Leavy, Taber & Schultz*), for respondent.

MUNSON, C.J.—Plaintiff, Josephine Nutley, appeals the dismissal of defendant S. J. Gregory from her action for delinquent rent owed under a lease agreement.

On July 16, 1943 plaintiff's predecessor in interest leased a building in the city of Pasco, Washington, to defendant S.

J. Gregory for a 30-year period at a monthly rent of $325. The lease contained the following paragraph:

RIGHT TO ASSIGN LEASE

VIII. Lessee shall have the right at any time during the term of this lease to assign the same upon the assignee assuming all obligations of the lessee hereunder, and upon lessee depositing with First National Bank of Walla Walla, Walla Walla, Washington, in escrow either cash in the sum of $5000.00 or collateral consisting of U. S. Government bearer bonds of the market value of $5000.00, which cash or security in said sum shall be held and maintained in said escrow as collateral security for the payment of all rentals due and to become due under this indenture of lease. Said escrow shall further provide that in the event of default in the payment of rent, upon demand of lessor and upon giving ten (10) days' written notice to lessee, lessor shall be entitled to apply said security pro tanto through said escrow, to payment of any and all rents then past due hereunder. Upon the expiration of the term of this lease, said escrowee shall forthwith return or refund said cash or security not theretofore paid or delivered unto lessor, to lessee.

Said lessee shall be entitled to all income and interest derived from said escrowed securities or money during the term of said escrow. Escrow charges to be paid by lessee.

Upon such assignment and upon the establishment of said escrow, all liabilities of S. J. Gregory, lessee hereunder, shall cease and determine. Lessee shall have the right to sublet said premises or any portion thereof from time to time.

On September 26, 1968 Gray Building, Inc. was duly incorporated with its principal stockholder being S. J. Gregory. Defendant Gregory thereupon signed his interest in the lease to defendant corporation. The corporation deposited $5,000 in escrow pursuant to the requirement of the above paragraphs. Plaintiff sought payment for back rent from Gregory and Gray Building, Inc.

The trial court held the corporation was responsible for the back rent but that the assignment by Gregory and the

payment of $5,000 into escrow terminated Gregory's liability.

Plaintiff contends the trial court should have pierced the corporate veil of Gray Building, Inc. and found defendant Gregory liable for the rent. We agree.[1]

In *National Bank of Commerce v. Dunn*, 194 Wash. 472, 78 P.2d 535 (1938) a comparable situation was presented whereupon the court, sitting en banc, stated as follows at pages 492-94:

> The record clearly shows that respondent assigned the lease to Ansonia in an attempt to escape responsibility for the payment of rent under the lease. Times were hard, and the lease was not then profitable, although at some future time it might become so. At the time of the assignment and until December, 1936, respondent owned practically all the stock of Ansonia, and any profit which the lease might earn would, of course, inure to his benefit. The transaction was carried out perfectly openly, and it does not appear that any facts were concealed, a clear-cut question of law being here presented.
>
> It is well established that an assignment of a lease in order to terminate any privity of estate on the part of the assignor, must be a *bona fide* assignment, and not one which is fraudulent or merely colorable. . . .
>
> . . .
>
> Here, of course, nothing was concealed, the fact that respondent would continue to receive any benefits which might be derived from the use of the property being perfectly apparent.
>
> We are mindful of the fact that an assignee of a lease, not bound by privity of contract, may relieve himself of liability under the lease by assigning the same, even to a person who is entirely irresponsible. The question to be here determined is: Has any assignment actually been made, or has respondent simply passed the lease from one hand to the other, himself remaining at all times the actual owner thereof?
>
> The organization of the corporation by respondent and

---

[1] In support of the trial court, defendant cites *Tiernan v. Sheldon*, 191 So. 2d 87 (Fla. 1966) for the proposition that the terms of the lease provide for free assignment; the formulation of a corporation to escape future accruing obligations was not fraudulent per se; thus, the court could not pierce the corporate veil.

the assignment of the lease thereto were subject to no legitimate criticism. The acts were not fraudulent, and probably several good reasons existed for proceeding after that manner. The organization of corporations is a perfectly legitimate method of carrying on business and owning property, the only question to be here considered being the effect of the organization of the corporation and the assignment of the lease thereto upon the relationship which existed between respondent and appellants.

Clearly, so long as respondent owned practically all of the capital stock of Ansonia, and Ansonia owned the lease here in question, respondent was the only person who could profit from the existence of the lease. He was the sole person beneficially interested therein. We are not here concerned with questions which might arise between any other persons on the one hand, and Ansonia, or respondent, on the other, or between such third persons and respondent and Ansonia jointly. We are here concerned only with the relationship existing between appellants, as lessors, and respondent, as lessee, together with Ansonia, as respondent's assignee.

Thereafter, the court examined various cases from this jurisdiction and others, concluding at pages 498-501:

It is interesting to note that these authorities stress the importance of the fact that the assigning tenant continues to receive the benefits derived from the use of the property. Clearly, in the case at bar, respondent would receive, through the medium of his corporation, Ansonia, any benefits which might accrue from the tenancy of the property covered by the lease.

. . .

Any advantage which might accrue to the lessee would benefit respondent. The profits would pass through a set of books kept under a name other than his, but always he stood by to receive any possible gain. We are convinced that the *alter ego* doctrine applies, and that the assignment of the lease to Ansonia did not operate to relieve respondent from liability for the payment of rent under the Thomas lease. Respondent was and remained, in the eye of the law, in so far as appellants were concerned, the sole party in interest as tenant under that lease, and it must be held that the transfer to Ansonia

did not relieve respondent from the obligation to pay rent.

The fact that respondent, in assigning the lease to Ansonia, did so openly, and immediately informed appellants of his action, cannot, as argued by respondent, operate to respondent's advantage. As we have stated, it may be assumed that he was at liberty to assign the lease to such a corporation if he desired to do so, but the fact that he did so openly, and that there was no fraud or concealment of any material fact, cannot change his relationship to the corporation and to appellants. The objection which appellants may urge to respondent's position is not that respondent wrongfully assigned the lease to Ansonia, but that he now contends that, because of such assignment, he is, from the date of the assignment, free from the obligation to pay rent.

The court held the assignor was obligated to pay rent up until the time he divested himself of the ownership of the assignee's stock.

A uniquely comparable situation exists here. It is obvious the sole purpose of Gregory's assignment to the corporation was to escape his personal responsibility and liability under the lease. This clearly is precluded under *National Bank of Commerce v. Dunn, supra.* The only distinguishing feature would be the $5,000 payment provision. Since the assignment is inoperative so long as defendant Gregory retains controlling interest in Gray Building, Inc., there is no occasion for the defendant to pay the $5,000 pursuant to the lease provision. The fact that he paid the $5,000 does not make the assignment operative.

Judgment is reversed and the case is remanded to the trial court to enter judgment in accordance with this opinion.

GREEN and EVANS, JJ., concur.

Petition for rehearing denied June 12, 1972.

Review denied by Supreme Court July 25, 1972.